## Louisville Tin & Stove Co. v. Lay.

(Decided Dec. 5, 1933.)

THOMAS F. YOUNG for appellant.
HIRAM H. OWENS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Louisville Tin & Stove Company, a corporation, with its chief office at Louisville, Ky., without the knowledge or consent of Mrs. May Lay, who was engaged in business at Corbin, Ky., under the firm name and style of Lay's Variety Store, shipped to her, in her firm name, a lot of heaters, gas ranges, and circulators of the value of $701.06, via the Louisville & Nashville Railroad Company. At that time D. W. Lay, the husband of May Lay, was engaged at Corbin, Ky., in an independent business under the firm name of Lay's Electric Shop. He was insolvent and without credit. Mrs. Lay was solvent with good credit which induced jobbers and wholesalers to ship goods to her when ordered in her firm name. The merchandise was shipped in good faith and billed to Lay's Variety Store, Corbin, Ky., by the Louisville Tin & Stove Company, and received by the railroad company at Corbin, Ky., on September 16, 1930. B. Wax was a drayman at Corbin, and during the month of September nine shipments of merchandise arrived at Corbin consigned to Lay's Variety Store and each of them was delivered by the railroad company to Wax, the drayman for Mrs. Lay. Wax claims that he was authorized by her to receive shipments of merchandise consigned to Lay's Variety Store, whenever they arrived at the freight

depot at Corbin, and that on the morning of September 18th he noticed in the freight station a number of gas stoves, ranges, etc., consigned to Lay's Variety Store. Knowing that Mrs. Lay was not selling that kind of merchandise, he did not take the same out of the depot until he talked with her. On the forenoon of September 18th he imparted to her the information of the number of ranges, stoves, etc., at the depot, billed to her, and asked her what she wanted done with them. She became angry and announced, "that was some of Mr. Lay's doings, and that she knew nothing about the shipments at all and had nothing to do with them, but that she would find out about them." He claims he went back that afternoon to her place of business, again asked her about the shipment, when she told him to deliver the ranges, stoves, etc., to Lay's Electric Shop, and that he did so. D. W. Lay "gave him a check for the freight and drayage." Mrs. Lay's version of the transaction is that she knew nothing about the shipment; that she did not order the merchandise or authorize the ordering of same, directly or indirectly; that when Wax told her about the shipment being at the freight depot she became very angry and objected to it and refused to accept same; that Wax first told her about the shipment one morning; that she talked to her husband, D. W. Lay, owner of the Lay's Electric Shop, and that later, some time that afternoon, the drayman, Wax, mentioned the matter to her again, and that she told him to see Mr. Lay and Mr. Bohmer about the matter; that "if she told Wax to deliver the merchandise to Lay's Electric Shop, she did not remember it; that she and W. D. Lay were man and wife, having two children and reside in the same house."

Of the entire shipment of merchandise, $349.39 worth was returned to the Louisville Tin & Stove Company, the balance retained by Lay's Electric Shop of the value of $359.67. This action was brought to recover this balance. The case was tried before a jury, resulting in a verdict in favor of Mrs. Lay.

The testimony not only of Wax, the drayman, but that of Mrs. Lay, shows that although the merchandise was billed and shipped to Lay's Variety Store without the knowledge or consent of Mrs. Lay, she, after its arrival, assumed control of its disposition, knowing full well that it had been so billed and shipped by the Louis-

ville Tin & Stove Company. It was entirely optional with her to reject it unqualifiedly, or to accept it or direct it to be delivered to her husband. Without considering the testimony of the drayman, bearing on this topic, her own testimony shows that she directed the drayman to see her husband, thus conferring upon him the authority and right to determine the disposition of the shipment. After so doing, on his failure to pay the balance due thereon, she cannot escape her liability therefor to the consignor, the Louisville Tin & Stove Company. It was at her direction and by her authority that the merchandise reached the possession of her husband at his place of business.

It is a reasonable and a sound principle that where merchandise is consigned to one in his name, in the absence of an express contract or order or when one person sends or delivers goods to another, under circumstances which indicate that a sale is intended and the one to whom the goods are sent or delivered with knowledge of the facts does not object or offer to return them within a reasonable time, but retains and uses them as his own or directs another to do so, a contract of sale and purchase will be implied. Caldwell & Drake v. Cunningham, 162 Ky. 272, 172 S. W. 498, 500; Caskey v. Williams Bros., 227 Ky. 73, 11 S. W. (2d) 991.

In Caldwell & Drake v. Cunningham, we quoted with approval from Estey Organ Co. v. Lehman, 132 Wis. 144, 111 N. W. 1097, 11 L. R. A. (N. S.) 254, 122 Am. St. Rep. 951, the prevailing rule in such cases:

"The defendants having received and retained the property with knowledge of the price plaintiff expected to receive, and without any agreement, express or implied, for a different price, they cannot escape payment of the price stated in the invoice. * * * The minds of the parties not having met upon the price prior to the time the property was received by defendants at Houghton, Mich., it was their duty, when they received it with knowledge of the price, to refuse to accept it, unless they were willing to pay the price stated in the invoice. Having taken the property and converted it to their own use, they became liable to pay such price, which the evidence establishes was the regular selling price and a reasonable price."

To the same effect see Cunningham Manufacturing Co. v. Rotograph Co., 30 App. D. C. 524, 15 L. R. A. (N. S.) 368, 13 Ann. Cas. 1147; Johnson v. Gattegno (Tex. Civ. App.) 267 S. W. 740; and Genuine Panama Hat Works v. Paragon Hat Co., 245 Ill. App. 531.

Mrs. Lay, however, failed to exercise her right to repudiate the shipment, but exercised the authority of authorizing the drayman to see her husband for directions over it. Her acts constitute an acceptance of the shipment and bring the case squarely within the principle we have reiterated.

The trial court erred in refusing to direct a verdict for the Louisville Tin & Stove Company. The motion for an appeal is sustained, the appeal granted, and judgment reversed for proceedings consistent herewith.