## CONSOLIDATED PRODUCTS CO. v. BLUE VALLEY CREAMERY CO.*
### No. 11011.

Circuit Court of Appeals, Eighth Circuit.
May 25, 1938.

*Rehearing denied June 22, 1938.

John T. Chadwell, of Chicago, Ill. (Victor P. Kayser, of Chicago, Ill., Floyd M. Sprague, of St. Joseph, Mo., Nicholson, Snyder, Chadwell & Fagerburg, of Chicago, Ill., and Mayer, Conkling & Sprague, of St. Joseph, Mo., on the brief), for appellant.

Benjamin Phillip, of St. Joseph, Mo. (R. E. Culver and Culver, Phillip, Kaufmann & Smith, all of St. Joseph, Mo., on the brief), for appellee.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an action at law in which the Blue Valley Creamery Company sued to recover the contract price of buttermilk sold to the defendant Consolidated Products Company. There have been two trials of the case to the District Court, the jury being waived. On the first trial of the case, the District Court dismissed the action at the close of the plaintiff's testimony on the ground that the contract sued on was oral and was by the terms thereof not to be performed within one year from the making thereof, and therefore could not be enforced under the Missouri statute of frauds, Mo.St.Ann. § 2967, p. 1835, and the plaintiff appealed to this court from the judgment of dismissal. Blue Valley Creamery Co. v. Consolidated Products Co., 8 Cir., 81 F.2d 182.

Our opinion on that appeal states the substance of the written contract entered into between the parties on August 19, 1927, by which the Consolidated Products Company agreed to buy the entire output of raw buttermilk produced in certain creameries of the Blue Valley Creamery Company for a period of five years from March 31, 1928, at 23 cents per hundred. We noted that in the fall of 1930 the price of buttermilk declined, and on that account the creamery company, in January 1931, consented to a reduction from the contract price of three cents per hundred for the year 1931, but upon an oral agreement with defendant to modify the written contract by extending it at the 23 cent price over an additional year, from March 31, 1933, up to April 1, 1934.

This court, upon full consideration of the Missouri law as set forth in the statute of frauds of Missouri and the decisions of its Supreme Court, held that the contract sued on, which was an oral modification of a contract in writing not to be performed within one year from the making thereof, was within the state statute of frauds and was void.[1] But the court also held that the contract was a divisible contract because payments for deliveries thereunder were to be made monthly, and that under Missouri law a party who completely performed such a divisible contract was entitled to recover for such complete performance of a divisible part according to the contract, where the performance was referable to the oral agreement and in reasonable expectation that the other party would perform it.

There was a contention for the defendant that there had been no complete performance of any part of the contract, but that defendant had repudiated the alleged oral contract before the deliveries of buttermilk sued for were made, and that none of the deliveries was received under the contract. Defendant insisted that this court ought to sustain the judgment of the trial court denying a recovery to the plaintiff for the contract price because the defendant had not received the buttermilk under the contract.

This court decided the law upon the question so presented in favor of the defendant, and indicated its determination that it was incumbent on the plaintiff to show that at the time of the alleged performance defendant was not denying the contract, but that under the circumstances then existing there was a reasonable ex-

---

[1] For additional Missouri cases holding that "an executory contract which is required under our statute to be in writing cannot be modified by parol agreement" see citations in Miller v. Arnold, Mo. App., 51 S.W.2d 124, 125.

pectation on the part of the plaintiff that the defendant would perform it. We declared: "The right of the plaintiff to recover the contract price for the buttermilk actually delivered is dependent upon whether deliveries were made by plaintiff and accepted by defendant under the contract." This court referred, however, to its duty to draw the most favorable inferences reasonably possible from the plaintiff's testimony, and held that the evidence then before the court was insufficient as a matter of law to charge plaintiff with notice that defendant was denying the alleged contract when the deliveries of buttermilk were being made. We remanded the case because the question whether deliveries were made by plaintiff and accepted by defendant under the contract could not be determined as a matter of law upon the testimony in the record.

After the remand of the case, the plaintiff amended its pleadings and incorporated therein the following allegations:

"On March 31, 1933, after plaintiff had delivered and defendant had received and accepted buttermilk during the year 1931 at the reduced price hereinabove stated, the defendant asserted that the contract expired on that date, to-wit: March 31, 1933. On April 1, 1933, plaintiff notified defendant that the contract had not expired; that it would continue to sell and deliver the buttermilk and bill the defendant for it on the basis of the original contract, to-wit: Twenty-three cents per hundredweight, calculated on the basis of one hundred and sixty (160) pounds of buttermilk for each one hundred (100) pounds of butter produced, and that if defendant discontinued picking up the buttermilk as usual plaintiff would run the buttermilk down the sewer in accordance with the terms of the agreement and continue to bill the defendant therefor."

The testimony on the second trial differed from that on the first trial, in that it was clearly shown on the second trial that the defendant had fully advised the plaintiff that it had repudiated and denied the oral contract in question before the buttermilk involved in the suit was delivered or received. And the trial court so found.

But the plaintiff contended that it was entitled to recover the contract price for the buttermilk, notwithstanding such repudiation of the contract by the defendant and notwithstanding the decision of this court, because it was alleged in the amendment to the pleading and it appeared from the testimony that at the times when the buttermilk was taken by the defendant, the defendant was informed by plaintiff and well knew that the plaintiff was claiming that the contract had not expired, but that the plaintiff would continue to sell and deliver the buttermilk and bill the defendant for it at the original contract price. It contended an agreement on the part of defendant to pay the contract price was implied in fact. This contention of the plaintiff was sustained by the trial court and it entered judgment for the plaintiff for the full contract price of the buttermilk received by defendant during 1933 after March 31st of that year, such price being greatly in excess of the market value. The court also gave judgment to the plaintiff for the contract price of certain other buttermilk manufactured by plaintiff and tendered during the period after March 31, 1933, but not received by defendant.

On this appeal taken by the defendant to obtain a reversal of the judgment against it, defendant contends that the judgment for the contract price and in enforcement of the contract was erroneous, because the contract was void under the statute of frauds and defendant's obligation was legally limited to the reasonable value of the buttermilk which was received by it (which obligation had been substantially discharged.)

In urging its theory for the recovery of the contract price of the buttermilk, the plaintiff has not sought to question the expressed conclusion of this court that the oral contract sued on in the case was one not to be performed within a year, and that it was void under the statute of frauds of Missouri, where the contract was made, nor the finding of the trial court that the plaintiff knew defendant had repudiated and was denying the contract at the time of the buttermilk deliveries. But plaintiff has cited numerous cases which it contends establish a right to recover the price fixed in the void contract broader than the definition of the right in this court's opinion on the former appeal. The cases are claimed to support the contention that the vendor does have a right to recover the price for his merchandise specified in the void contract, notwithstanding the vendee's denial of the contract, when the vendor is able to show that he informed the vendee that he was asserting the contract and demanding the price specified therein at the time of the deliveries.

It was apparent to this court from the record before it on the former appeal of the case, that the plaintiff had at all times asserted the existence of the contract and had insisted that the defendant pay the price specified in the contract, but, notwithstanding that fact, we limited plaintiff's right of recovery by requiring it to prove that there had been a complete performance referable to the contract before it could recover the contract price upon any divisible part of the contract. We do not think the cited cases contradict our conclusion or support the plaintiff's position.

The cases relied on by plaintiff do illustrate the law that where the statute of frauds is not involved, but where a merchant exposes his goods for sale at a certain price, one who knows the price and silently accepts the goods becomes liable to pay the price—the law implies that he promised to pay the price when he took the goods with knowledge of what the seller's price was. Such is the import of the following cases, cited and relied on by plaintiff: Caldwell & Drake v. Cunningham, 162 Ky. 272, 172 S.W. 498; Estey Organ Co. v. A. & E. Lehman, 132 Wis. 144, 111 N.W. 1097, 11 L.R.A.,N.S., 254, 122 Am.St.Rep. 951; Neidig v. Cole & Pilsbury, 13 Neb. 39, 13 N.W. 18; Mummenhoff v. Randall, 19 Ind.App. 44, 49 N.E. 40; Royal Roofing Co. v. Goss, 170 Ark. 398, 280 S.W. 1; Farmers' Handy Wagon Co. v. Newcomb, 192 Mich. 634, 159 N.W. 152; Doerr v. Woolsey, 15 Daly 284, 5 N.Y.S. 447; Genuine Panama Hat Works v. Paragon Hat Co., 245 Ill.App. 531; Landon v. Kansas City Gas Co., 8 Cir., 10 F.2d 263. To the same effect are: Louisville Tin & Stove Co. v. Lay, 251 Ky. 584, 65 S.W.2d 1002; Orme v. Cooper, 1 Ind.App. 449, 27 N.E. 655; Cunningham Mfg. Co. v. Rotograph Co., 30 App.D.C. 524, 15 L.R.A.,N.S., 368; Louisville Soap Co. v. Taylor, 6 Cir., 279 F. 470, loc.cit. 479; Caskey v. Williams Bros., 227 Ky. 73, 11 S.W.2d 991, loc.cit. 993; Barnes v. Shoemaker, 112 Ind. 512, 14 N.E. 367; Thompson v. Douglass, 35 W. Va. 337, 13 S.E. 1015; Bartholomae v. Paull, 18 W.Va. 771; West v. L. W. Sweet, Inc., Tex.Civ.App., 292 S.W. 251.

But none of the cases cited holds that such is the rule of law applicable in a suit for the contract price named in a contract which the statute of frauds declares to be void. The situations may be contrasted to illustrate the distinction: If a customer goes into the store and picks a garment from the pile marked "$5.00 Each", has it wrapped up and departs with it, the law implies he promised to pay $5.00, and the courts make him pay that price if he is sued. All of the plaintiff's cases and texts sustain such a conclusion.

But in this contrasted case, when the truck of this defendant drew up to load from the plaintiff's tanks, the plaintiff said (in effect), "You know you promised to pay me twenty-three cents for this buttermilk," and defendant said, "No, I did not so agree, but because the stuff is perishable and it would hurt us both to waste it, I will take it at a fair price." The plaintiff replied: "Take it or leave it. I am holding you to your contract." Notwithstanding the plaintiff's testimony that the defendant did orally agree to the 23 cent price, still if the statute of frauds made the promise void, then the statute prohibits the court from enforcing the contract price.

The exception the courts have made in suits for recovery of the contract price of goods delivered under a contract which is void by the statute of frauds is the exception stated and delimited in our former opinion, namely: where both parties acknowledge the void contract for the delivery of goods and there is complete performance as to the whole or as to a divisible part thereof by delivery and acceptance of the goods, then the court will compel payment at the contract price. But outside of that exception, and in the absence of a complete performance in whole or divisible part under the void contract and in mutual recognition thereof, and in reasonable expectation of each party that the other party would perform the contract, we are persuaded that the law is very firmly settled according to the opinion on the first appeal herein. The contract which will be implied is one to pay the reasonable value of the property. In General Paint Corp. v. Kramer, 10 Cir., 68 F.2d 40, 41, the court said, "It is well settled that where one person has transferred property to another under a contract which is non-enforceable because of the statute of frauds, and the transferee relying upon the statute of frauds declines to perform his part of the contract, the transferor may recover upon an implied contract the reasonable value of the property transferred. Day v. New York Cent. R. Co., 51 N.Y. 583; Basford v. Pearson, 9 Allen (Mass.) 387, 389, 392, 85 Am.Dec. 764; Cromwell v. Norton, 193 Mass. 291, 79 N.E. 433, 118 Am.St.Rep.

499; Kemp v. Kemp, 248 Mass. 354, 142 N.E. 779; Booker v. Wolf, 195 Ill. 365, 63 N.E. 265; Jelleff v. Hummel, 56 N.D. 512, 218 N.W. 227; Nelson v. McElroy, 140 Minn. 429, 168 N.W. 179, 587; Earl of Falmouth v. Thomas, 1 Cromp., M. & R. 88; Talbert v. United States, 25 Ct.Cl. 141, 156; Franklin v. Matoa Gold Min. Co. (C. C.A. 8) 158 F. 941, 948, 949, 16 L.R.A. (N. S.) 381, 14 Ann.Cas. 302; Clark v. United States, 95 U.S. 539, 542, 24 L.Ed. 518."

The reasonable value of the property is the measure of damages. 2 Sedgwick on Damages, 1309, § 651; 2 Joyce on Damages, 1423; 1 Sutherland on Damages, 294, § 81. The text writers agree that the basis of the action is quasi contractual. Restatement of the Law of Contracts, 355; Restatement of the Law of Restitution, §§ 47, 108(d); 25 R.C.L. 718, § 364; 27 C.J. 358, § 437; 29 Am. & Eng. Enc. of Law, 2d Ed., 836. (Quoted in Porter v. Shaffer, 147 Va. 921, 133 S.E. 614.) 2 Federal Contracts 359, § 527; 2 Elliott on Contracts, 454, § 1216; Lawson, Rights, Remedies and Practices, vol. 5, 3923, § 2336; Keener, Quasi-Contracts, § 277; 2 Reed, Statute of Frauds, 1884, § 23; Browne, Statute of Frauds, 5th Ed., 1895, § 118. And it is often stated that the quasi-contractual remedy is the only one available. [2] Williston, Contracts, vol. 2, 1546, § 534, "Where the original contract is unenforceable the quasi-contractual remedy is the only one available and accordingly the court should undertake to value any benefit the plaintiff has received and deduct this benefit from the plaintiff's recovery."

Page on Contracts, vol. 3, 2568, § 1503, "If a contract is unenforceable by reason of the statute of frauds, the party who has performed can recover the value of his performance on the theory of quasi-contract, since otherwise he would be left without remedy."

The Missouri Court of Appeals has held that the statute of frauds cannot be evaded by the device of framing an action in account stated. In Crowell v. Houde Engineering Corp., 19 S.W.2d 516, 517, 518, the court said, "In Woodson v. Leo-Greenwald Vinegar Co., 220 Mo.App. 831, 832, 272 S. W. 1084, Judge Arnold, speaking for this court, held that an account stated must be founded on previous transactions creating the relation of debtor and creditor between the parties; * * * that, if an unexecuted contract is within the statute of frauds so that it is not enforceable, it cannot form the basis of an account stated. See, also, 1 C.J. 699, 701."

In a well considered case, the Missouri Court of Appeals said, Cozad v. Elam, 115 Mo.App. 136, 141, 91 S.W. 434, 436,

"* * * In the very nature of the case, appellant could have no remedy on the contract itself, to pursue the thing for which he has contracted and performed the services. It is not of his fault, however, but by the default of the respondent, that he is precluded from having that for which he has expended his means and labor, and to which, in good conscience, he is so eminently entitled. The law, in its inherent justice, will not leave the party thus aggrieved without a remedy. It is a maxim that for every wrong there is a remedy. The courts, therefore, in their wisdom, in making proper application of this principle, have sought out and seized upon the one reasonable and logical means of affording the proper measure of compensation for such wrong, and that is, by awarding to the injured party the value of that with which he has been induced to part under this unenforceable contract * * *.

[2] In Franklin v. Matoa Gold Mining Company, 8 Cir., 158 F. 941, 948, 16 L. R.A.,N.S., 381, 14 Ann.Cas. 302, this court said,

"The discussion of this question by Depue, Judge, in McElroy v. Ludlum, 32 N.J.Eq. 828, is not only instructive, but exact and unanswerable in its logic. The plaintiff sued upon a contract for services rendered the defendant, which was within the statute of frauds. The learned judge said:

" 'The suit is in substance an action to enforce a legal demand. It must, therefore, be decided upon the legal principles by which the right of a party to recover compensation for services rendered, under a contract invalid by the statute of frauds, is determined. Performance of a contract invalid by the statute will not validate the contract so as to enable a party to enforce it by an action upon the contract. Unless in cases specially provided for in the statute, part performance will not validate the contract at law. * * * The only remedy in such cases is by an action on a quantum meruit to recover the value of the services.' "

See, also, Winton v. Amos, 255 U.S. 373, 393, 41 S.Ct. 342, 350, 65 L.Ed. 684, and cases cited, including McElroy v. Ludlum at page of above quotation.

"The principle underlying this doctrine, as enunciated in the most carefully considered cases, is that inasmuch as the contract is unenforceable and that the vendor has received and holds the fruits of the services, or the property or money, or other consideration paid, and refuses to perform on his part, he thus holds it without consideration and therefore the law will imply a promise to repay it, and will raise up in favor of the party thus wronged, an impled undertaking to that effect, which can be enforced as of quantum meruit for the value of such services or property or money paid. Therefore it necessarily follows that if the vendor is able and willing to perform on his part, no such failure of consideration is shown and such promise is not implied by the law. The principle is sound and just. It pervades all of the most carefully considered cases and is recognized by the standard text-writers as settled law. Abbott v. Draper, 4 Denio (N.Y.) 51; Smith v. Smith's Adm'rs, 28 N.J.Law, 208, 78 Am. Dec. 49; Coughlin v. Knowles, 7 Metc. (Mass.) 57, 39 Am.Dec. 759; Collier v. Coates, 17 Barb.(N.Y.) 471; Galway v. Shields, 66 Mo. 313, 27 Am.Rep. 351; Browning v. Walbrun, 45 Mo. 477; Browne on Stat. of Frauds (5th Ed.) 1895, § 122; 29 Am. and Eng.Ency.Law (2d Ed.) 836 to 840; 2 Reed on Stat. of Frauds, §§ 621 to 623. It has therefore been held, in all of the cases coming under our observation which are in point, that in such a case the true measure of recovery is the money paid or reasonable value of the services rendered, notwithstanding the contract price. The rule is embedded firmly in both reason and authority, as will be readily observed by reference to the following authorities: Smith v. Smith's Adm'rs, 28 N.J.Law, 208–216, 78 Am.Dec. 49; Clark v. Davidson, 53 Wis. 317, 10 N.W. 384; Hamilton v. Thirston, 93 Md. 213, 48 A. 709; Ludwig v. Bungart, 48 App.Div. 613, 63 N.Y.S. 91; Grant v. Grant, 63 Conn. 530, 29 A. 15, 38 Am.St.Rep. 379; Miller v Eldridge, 126 Ind. 461, 27 N.E. 132; In re Williams' Estate, 106 Mich. 490, 64 N.W. 490; Howe v. Day, 58 N.H. 516; Greer v. Greer, 18 Me. 16; Parker v. Niggeman, 6 Mo.App. 546; Andrews v. Broughton, 78 Mo.App. 179; 3 Sutherland on Damages (3d Ed.) § 684; 2 Reed, Stat. of Frauds, 1884, § 23.

"On this question, the learned text-writers thus state the rule: 'A party, however, who has paid money in fulfillment of a verbal contract which the other refuses or becomes unable to carry out, may recover it in an action for money had and received. He may also recover property or its value, delivered in the same way, by any suitable proceeding; and where a piece of property is delivered in payment, as being worth a certain sum, it is not in the power of the defendant, without the plaintiff's consent, to return the specific things received, but he must refund in the usual mode for money had or goods sold. In like manner, one who has rendered services in execution of a verbal contract which, on account of the statute, cannot be enforced against the other party, can recover the value of the services upon a quantum meruit.' Browne on Stat. of Frauds (5th Ed.) 1895, § 118. See, also, § 122. * * *

"Thus by the concurrence of authority, we find that where one party, morally obligated to convey, repudiates the contract and refuses to perform, the other having performed and being thus left helpless in so far as the contract is concerned, is entitled as of right to be placed as near as can be in statu quo. * * *"

Only one case has been found where the plaintiff attempted to escape the force of the statute of frauds by making the contention presented by the creamery company in this case. In Lonsdale v. J. A. Migel, Inc., 222 App.Div. 197, 225 N.Y.S. 593, 597, a plaintiff who had rendered services under a contract void under the statute of frauds, advanced the contention that he could recover at the contract price on the theory of a contract implied in fact. The court observed that the defendant had denied the existence of a valid contract and said that contracts cannot be implied in fact against the denial of one of the parties. Citing Miller v. Schloss, 218 N.Y. 400, 113 N.E. 337; Earle v. Coburn, 130 Mass. 596. See, also, Johnson v. American Paper Products Co., Mo.App., 201 S.W. 651.

It is well settled that a contract cannot be implied in fact against the express declaration of a party. A contract implied in fact is based on conduct showing an intention to contract, and the implying of such a contract in the face of denials has been described as a contradiction in terms. Earle v. Coburn, supra, relied upon by the New York court in Lonsdale v. J. A. Migel, Inc., supra, and quoted by this court in Municipal Waterworks Co. v. City of Fort Smith, D.C., 216 F. 431, and Lueddecke v. Chevrolet Motor Co., 8 Cir., 70 F. 2d 345. See, generally, Mariash on Sales,

62, § 42; Woodward, Quasi Contracts, § 95; Page, §§ 1434, 1436; Restatement, Law of Contracts, § 5; Klebe v. U. S., 263 U.S. 188, 191, 44 S.Ct. 58, 68 L.Ed. 244; Baltimore & Ohio R. Co. v. U S., 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816; First National Bank v. Matlock, 99 Okl. 150, 226 P. 328, 36 A.L.R. 1088. There is no estoppel. See Taber Lumber Co. v. O'Neal, 8 Cir., 160 F. 596, 601; Topas v. John MacGregor Grant, Inc., 2 Cir., 18 F.2d 724, 52 A.L.R. 807.

■ We are fully persuaded that the plaintiff in this case was not entitled to recovery upon the contract sued on, either for the contract price of the buttermilk which defendant received or on account of that which defendant refused to take, or for the buttermilk which was run down the sewer. There was no obligation upon the defendant to pay anything beyond the reasonable market value of the buttermilk which it took from the plaintiff, and plaintiff has not made any claim for recovery upon the theory of quantum meruit. Jury was waived upon each of the two trials of the case. The facts have been fully developed and complete findings of fact were made by the trial court. None of the essential findings are disturbed upon the appeal, but our conclusion is that the law allows the plaintiff no recovery upon the case pleaded and the action should be dismissed. Fort Scott v. Hickman, 112 U.S. 150, 5 S.Ct. 56, 28 L. Ed. 636; Churchill v. Buck, 8 Cir., 102 F. 38; U. S. v. Illinois Surety Co., 7 Cir., 226 F. 653; U. S. v. Stark, 6 Cir., 32 F.2d 453; Compagnie Generale, etc., v. U. S., 2 Cir., 51 F.2d 1053, 1057; Cocke v. Vacuum Oil Co., 5 Cir., 63 F.2d 406; Monroe Land, etc., Co. v. Sanders, 5 Cir., 79 F.2d 292; Northern Pacific Ry. v. Van Dusen Harrington Co., D.C., 34 F.2d 786.

Reversed with directions to dismiss at plaintiff's costs.

STONE, Circuit Judge (concurring).

I concur in the opinion. However, I think it proper to state that I do so only because this is an appeal from the second trial of this litgation after a first appeal had established certain rules as the "law of the case". In a court which sits with necessarily shifting personnel (as does this Court) it is peculiarly important that such change in personnel shall not be allowed to affect the rights of parties as influenced by an orderly continuity of decision. This importance is emphasized where there are successive appeals in the same litigation.

So believing, I shall adhere to the law of the case announced in the former appeal to this Court. 8 Cir., 81 F.2d 182.

But while so adhering, I think it not improper to express an apprehension that justice has failed in this litigation. The situation which arouses this conception is as follows. There was a written contract between these parties for the sale of buttermilk at the fixed price of twenty-three cents per hundred pounds. This contract was for a term beginning August 19, 1927, and ending March 31, 1933. About January, 1931, the *buyer* sought and secured a modification of this contract. That modification was that, in return for a reduction of the above price during the year 1931, the contract *would be extended one year.* During 1931, the buyer received the full consideration of the reduced price. At the end of the term under the written contract, the buyer contended it was not bound to pay the contract price during the year of extension under the oral modifying agreement. However, it continued to take milk during part of the year of extension even though it disputed the price.

To allow the buyer to obtain and keep the full fruits and advantages of the modification agreement and to deny the seller any and all relief thereunder seems to me unjust. While I think the principle of *appling the law of the case in this Court is too important to admit of departure therefrom,* I am hopeful that a court not so closely bound thereby may take occasion to right what seems to me an injustice.